OPINION
{¶ 1} Appellant, Dwayne A. Stoutamire, appeals from the April 4, 2003 judgment entry of the Warren Municipal Court, in which he was sentenced for resisting arrest and criminal trespass.
 {¶ 2} On June 6, 2002, a complaint was filed against appellant for resisting arrest, a misdemeanor of the second degree, in violation of Warren City Ordinance 525.09, and criminal trespass, a misdemeanor of the fourth degree, in violation of Warren City Ordinance 541.05.[1] On June 19, 2002, appellant entered a not guilty plea at his initial appearance. A jury trial commenced on April 2, 2003, and appellant was found guilty.
 {¶ 3} The facts at trial revealed the following: on January 24, 2001, Officer Greg Hoso ("Officer Hoso"), with the Warren City Police Department ("WCPD"), was assigned to patrol the Trumbull Metropolitan Housing Authority ("TMHA") properties.[2] TMHA maintains a criminal trespass list of individuals who are not permitted to enter on the land or premises owned by TMHA, based on their involvement with respect to previously reported incidents.
 {¶ 4} According to Dave Ovensy ("Ovensy"), TMHA's Security Coordinator, appellant was on the criminal trespass list on the day at issue. Ovensy testified for appellee, the city of Warren, that appellant received two notices by certified mail, which informed him of the criminal trespass warning. Also, Officer David Weber ("Officer Weber") and Officer Brian Martinek ("Officer Martinek"), officers with the WCPD, stated that they explained to appellant that he was prohibited from reentering TMHA property, and that appellant signed the criminal trespass notice form.
 {¶ 5} Officer Hoso stated that at approximately 5:30 p.m., he was alone in his cruiser patrolling the Fairview Gardens, TMHA property. According to Officer Hoso, appellant's car went left of center, pulled onto the wrong side of the street, facing Officer Hoso's vehicle. Officer Hoso testified that appellant immediately exited his car and started to walk toward the front door of the apartment at 1866 Draper, TMHA property. Officer Hoso said that he called appellant over to the cruiser to ask him why he was parked on the wrong side of the street, and appellant complied. Officer Hoso indicated that he then asked appellant his name. After receiving appellant's name, Officer Hoso stated that he checked the criminal trespass list, which is in alphabetical order, and saw appellant's name listed.
 {¶ 6} At that time, Officer Hoso testified that he exited his vehicle, and told appellant that he was on the list and that he was not permitted to be on TMHA property. Officer Hoso said that appellant asked for a "break." Officer Hoso then told appellant that it is procedure to arrest subjects that are not permitted on TMHA property. Officer Hoso indicated that he attempted to pat appellant down on his right side but appellant pulled away and shielded himself. According to Officer Hoso, appellant talked really fast, moved and looked around, and was fidgety. Officer Hoso stated that he called for back up assistance and asked for Officer Martin Mines ("Officer Mines"), who was two blocks away.
 {¶ 7} Within two to three minutes, Officer Mines arrived at the scene. Officer Hoso testified that he asked Officer Mines to double check his criminal trespass list to confirm that appellant was listed. Officer Mines stated that he looked on his list and saw appellant's name. According to Officer Hoso, he told appellant to place his hands on the patrol car, and he attempted to pat him down for the second time. Officer Hoso said that he felt a bulge in appellant's left front pocket, and he pulled out a baggie which he believed to be crack cocaine. Officer Hoso explained that he put the baggie on the roof of the cruiser and attempted to place handcuffs on appellant. However, both Officer Hoso and Officer Mines related that appellant shoved Officer Hoso with his elbow which caused him to fall back two to three feet, grabbed the baggie, and threw it in his mouth. Officer Hoso indicated that he then went to grab appellant, but appellant swung and punched him, and all three fell to the ground. Officer Hoso maintained that he told appellant several times to stop resisting, but appellant did not comply.
 {¶ 8} According to Officer Hoso, appellant was able to break away and fled on foot. Officer Hoso chased after appellant on foot, and Officer Mines followed in his cruiser after calling for back up assistance. Officer Hoso testified that appellant threw the baggie from his mouth into a high grassy area. Officer Hoso said that he tackled appellant but could not handcuff him at that time because his handcuffs were on the ground near the cruiser where the initial struggle ensued. Officer Mines arrived and handcuffed appellant. Officer Hoso stated that approximately one minute later, two back up officers arrived. Both Officer Hoso and Officer Mines related that they never struck appellant at any time with any object. Officer Mines indicated that he never observed Officer Hoso strike appellant with any object.
 {¶ 9} Officer Hoso said that appellant never requested medical attention. Also, Officer Richard Bayless ("Officer Bayless"), who was a Corrections Officer with the Trumbull County Jail at the time of the incident, testified for appellee. According to Officer Bayless, part of his duties involved booking inmates. Officer Bayless stated that he went through the whole medical questionnaire with appellant and that appellant did not indicate any need for medical attention.
 {¶ 10} Two witnesses testified for the defense. Shameeka Redd ("Redd"), a resident of Fairview Gardens, stated that she saw Officer Hoso try to put handcuffs on appellant but appellant swung one of his arms. Redd said that Officer Hoso hit appellant with a nightstick, or a similar object. Redd indicated that she does not like Officer Hoso because she feels that he harasses people. Denise Code ("Code"), another resident of Fairview Gardens, testified that she was friends with appellant and that she believed that appellant was coming over to visit her. Code stated that she followed the police chase of appellant and saw Officer Hoso hit appellant one time with a black stick.
 {¶ 11} Pursuant to its April 4, 2003 judgment entry, the trial court sentenced appellant on the resisting arrest count to serve ninety days in jail, with fifty days credited for time served. The trial court also sentenced appellant on the criminal trespass count, which was to be served consecutively to the resisting arrest count, to thirty days in jail, with thirty days credited for time served. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 12} "[Appellant's] convictions are against the manifest weight of the evidence."
 {¶ 13} In his sole assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. With respect to the resisting arrest conviction, appellant contends that the officers used excessive force. Also, appellant alleges that with regard to the criminal trespass conviction, he was not aware that he was prohibited from being on TMHA property. Appellant stresses that he never signed any notice nor did he receive a second notice, which was signed by his grandmother. In addition, appellant indicates that the confrontation occurred in the street, on city property, and only after the struggle did he run across TMHA property in an attempt to protect himself. We disagree with appellant's contentions.
 {¶ 14} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 15} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 16} "* * *
 {¶ 17} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 18} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 19} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 20} In the case at bar, with respect to the resisting arrest conviction, Officer Hoso testified that after he determined that appellant was listed on the criminal trespass list, he attempted to pat him down but appellant pulled away and shielded himself. After Officer Mines arrived and confirmed that appellant was on the list, Officer Hoso attempted to pat appellant down again, felt a bulge in his pocket, and pulled out a baggie which he believed to be crack cocaine. Both Officers Hoso and Mines related that appellant shoved, swung at, and punched Officer Hoso, and all three fell to the ground. Although appellant fled on foot, Officer Hoso stated that he caught up with and tackled him, and Officer Mines handcuffed appellant. Again, both Officers Hoso and Mines maintained that they never struck appellant with any object. Officer Mines indicated that he never observed Officer Hoso strike appellant with any object. Also, both Officers Hoso and Bayless explained that appellant never requested nor indicated any need for medical attention. Although witnesses Redd and Code said that Officer Hoso hit appellant with an object, Redd also indicated that she does not like Officer Hoso because she feels that he harasses people. The jury chose to believe the officers, rather than appellant's witnesses, that appellant resisted arrest. Based on the evidence presented, the force used by the officers was appropriate.
 {¶ 21} With regard to the criminal trespass conviction, Ovensy testified that appellant received two notices by certified mail which informed him of the criminal trespass warning. Also, Officers Weber and Martinek both stated that they explained to appellant that he was prohibited from reentering TMHA property, and that appellant signed the criminal trespass notice form. Furthermore, Officer Hoso explained that when he arrived at the scene, he saw appellant walking toward the front door of the apartment at 1866 Draper, TMHA property. Thus, grounds existed to arrest appellant, since he was on TMHA property and on the criminal trespass list. As such, appellee put forth credible evidence that appellant had knowledge of his placement on the criminal trespass list and that he knowingly entered and remained on TMHA property.
 {¶ 22} The jury acted well within its discretion when it elected to believe the officers, rather than appellant's witnesses. Pursuant to the entire record, we cannot say that the evidence weighs heavily against the convictions, that the jury lost its way, or that a manifest miscarriage of justice occurred. Appellant's convictions are not against the manifest weight of the evidence.
 {¶ 23} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Warren Municipal Court is affirmed.
Christley, J., and Rice, J., concur.
[1] Appellant was previously additionally charged with felonious assault and tampering with evidence. A jury trial commenced on June 3, 2002, and appellant was found not guilty on both felony charges.
[2] TMHA is a government subsidized housing community that provides housing to persons who qualify for government assistance, and receives federal funds to provide extra police patrols.